Good morning, and may it please the Court. I'm Arthur Gardner. I represent Kennedy in this appeal. Mr. Kennedy is here in the courtroom in the back row. Also with me today is Joseph Staley, who also represents Kennedy. This appeal turns very largely on the nature of what is acquiescence. And acquiescence is an equitable defense that's intended to prevent injustice. And I would submit that in this case, the injustice has gone the other way by the application of the equitable defense. Normally, acquiescence requires three things. Some affirmative assurance that I'm not going to sue or otherwise assert my claim of trademark infringement against you. Secondly, that there has to be some inexcusable delay in bringing my claim. And third, there has to be some sort of prejudice to the defendant that flowed from either the inexcusable delay or from the assurance not to sue. And none of those factors are found here. We just don't have that kind of a case. Didn't your client tell at least one of the defendants that they could use the trademarks? In fact, they asked them to, even after the lawsuit was filed? No, Your Honor. What happened was the defendants were using the trademark over our objection, over Mr. Kennedy's objection. And they were infringing the mark. They were out there soliciting their own customers and using the mark in that way. They also had possession of the database that Mr. Kennedy had developed prior to the parties working together. What Mr. Kennedy did allow them to do is to add his students to his database that they had possession of. He did not at any time give them permission to infringe themselves. So there was a very, very limited consent for them to do some ministerial acts. And the case law indicates that the extent of acquiescence is dependent upon the extent of the consent that was granted. And if you exceed the consent that was given, then you no longer are in the safe harbor of acquiescence. Is that where the issue of fact in this case is, is what was the scope of the consent? Certainly that's a key issue, is what is the scope of that consent. I'm not sure that there is an issue of fact at this point. We've accepted the facts of the district court. The district court said that Mr. Kennedy gave permission to do those things. It's just that the court took that very limited consent and said, well, you've done some things that are inconsistent with your denying them the right to do this, and I'm going to allow them to infringe totally. And that's what's the point. Well, that's what I mean. I didn't ask my question well. By allowing the use of the database and, in fact, asking the defendants to use the database, that was not intended to be a blanket consent to use the trademarks. That's correct, Your Honor. And the district court thought otherwise. Apparently, Your Honor. Apparently. I don't know whether it – I can't tell from the district court's order whether the district court believed that there was a greater consent given than that. But it looks to me like what the district court did was said, well, there was some consent, and because there's some consent, I'm going to find acquiescence. And just kind of took that little bitty consent, extrapolated it out into acquiescence. But the district court failed to make any findings that are required. The findings that she's supposed to make – excuse me, that the district court was supposed to make – are that there was some affirmative act of assurance. There was none of that here. That there was some inexcusable delay. There was none of that here. And that there was some prejudice to the defendants. And there was no prejudice to the defendants in any of this. Why did you not get attorney's fees for winning the injunction? Is there any explanation for that? From what I can gather from the district court's order, the district court found that there was acquiescence and then borrowed us from all financial recovery, both for costs, attorney's fees, damages, all of it. So it seems that the district court found – You did succeed in getting an injunction, though. Is that correct? From any further –  We have an injunction against further infringement, Your Honor. Yes. Let me ask you this. How much is in controversy with respect to the damages? Do you have a – Approximately a million dollars. Significantly – You've got to keep in mind what happened in this case. Mr. Kennedy and his company – Excuse me. Plane travel wreaks havoc on my sight. This is – Mr. Kennedy and his company made a deal with cellular agency counsel, SACC, to cooperate. When that deal fell apart, because SACC was letting RealtyU, one of their related companies, infringe and not pay anything, the suit ensued. So RealtyU never had any permission. There was a time before the lawsuit when cellular agency counsel and Mr. Kennedy were working together. We call that the cooperative period. Then there was – That fell apart and then there's this period where we sent a demand letter and we sued. But RealtyU never had any permission, even under the cooperative period, to use the trademarks. Their use generated some $595,000. Since they never had any use, under any theory, their profits should be disgorged completely. In fact, it was their use that the district court found was the key to the unclean hands. The district court found that cellular agency counsel allowing RealtyU to use the trademarks and basically swindling Mr. Kennedy was unclean hands for cellular agency counsel. Now, the district court stopped short of actually saying that that's also unclean hands for RealtyU or Mr. Swanepoel. But the district court found that that diversion of funds was unclean hands for cellular agency counsel and it seems inherent that where the diversion from cellular agency to RealtyU for the benefit of Mr. Swanepoel was unclean hands for the person that caused it, it should be also unclean hands for the person that benefited from it. So we believe that all three of them are guilty of unclean hands. Unclean hands, then, the unclean hands doctrine says they don't have any recourse to the defense of acquiescence, period. And they, the police, argue that, well, that was a different conduct. That was a contract matter. And so because that's a contract conduct issue and we're talking about trademark infringement, the unclean hands doctrine doesn't apply. That's just nonsense. They were, what they were doing was infringing. They were allowing the infringement. They were encouraging the infringement. And, in fact, throughout this case, they've argued that their infringement is permitted because they own it, according to the contract. So their argument that the contract conduct is not related to the trademark infringement is disingenuous. So at a minimum, at a minimum, Kennedy should be entitled to all of realty use profits, which are almost $600,000. I said at the beginning that acquiescence is an equitable defense to prevent injustice. And here it's been turned on its head. It's extremely unjust and unfair for the trademark owner to have his intellectual property used by an infringer competitor for two years and get no compensation for that. The court denied all compensation for that. And why? Because the trademark owner asked the infringer to add some of the trademark owner's students to the database that was then in the possession of the infringer. And that should not permit the infringer to get off scot-free. It's the sort of unjustified windfall that the court in Conan in the Fifth Circuit was trying to avoid in applying the doctrine of acquiescence. This is a very strange case, frankly. And I'm trying to figure out, your client is upset enough to file a trademark infringement suit against the defendants. And then after filing that suit says, you can go ahead and use my database, which is part of the intellectual property. I mean, I've never seen a fact pattern like that before. I mean, it seems to me that perhaps the district court is simply thinking, well, they couldn't have been that upset about it. They couldn't have been that concerned about it. And if you're in the defendant's shoes, you've been sued. But at the same time, you're being asked to help the plaintiff out and use the IP to assist the plaintiff. And I think that that's where the question of equities comes into play. I mean, how much deference should we give there? I mean, you see what I'm getting at? It's like there's clearly some consent being given. And perhaps if I'm looking at this in the light most favorable to judgment, the district court is saying, wait a minute. They couldn't have been that outraged about the misappropriation of their intellectual property if they're asking the misappropriator to use it. And then what do they do subsequently to get them to stop? Well, you have to keep in mind that the primary business of these two entities was providing courses and soliciting – I mean, getting fees for teaching those courses. And before they came together, Mr. Kennedy had his database of students. He forwarded that to seller agency counsel. Once the parties split up, he no longer had possession of that and they wouldn't give it back. So he needed those new students to be added to that database. That's all it was. He never gave them permission to teach courses, to collect fees, to advertise that they were teaching courses or any of that sort of thing under his trademarks. He's just giving them – he is asking for some assistance from them. They're still doing some type of business together even after the relationship breaks up. Correct. That is true. He did ask for some assistance, but they were actively litigating the trademark infringement claims. And that should trump – they should be proceeding at their own peril at that. There's no way to believe that I'm free to infringe. There's no – I have no liability for infringing even though there's this trademark infringement lawsuit going on because Mr. Kennedy has asked me to add some names to the database. And you think your client – obviously you do – but you think your client did enough to make clear, I'm asking you to do this, but I'm not authorizing you to do anything else? I don't believe that it was stated that way, Your Honor. I believe it was just, please add these to the database until this litigation gets sorted out. So I don't think that there was – that wasn't done. Okay. That wasn't done. Thank you. You have a little less than three minutes. I'd like to reserve my time for rebuttal, Your Honor. Thank you. May it please the Court. Tim Hoddy on behalf of Cellar Agency Counsel, RealtyU, and Mr. Stefan Swinepoel. Your Honors, in listening to some of the opening argument, I wanted to make it clear some of the underlying factual things in the case. These two parties, the defendants and counter-defendants, got together and created an educational package. They merged their businesses together. They merged their trademarks together. And they created this Cellar Agency Counsel. Well, they tried to. Yeah, they tried to. They didn't transfer any stock or trademark. Now, in July of 2006, shortly after the deep cease and desist letter, the counter-defendants, who were the plaintiffs in this case, well, actually it was Cellar Agency Counsel, filed an action for declaratory relief, basically saying, we own this stuff. We've gone forward with the contracts. Let's validate this and have specific performance. Not until February of 2007 did Kennedy Center for Real Estate Education file its trademark infringement counterclaim. The court had trial in April through June of 2008, issued its findings in September 30, 2008. The court, district court, specifically pointed out the key issue in this was, who owns this? And the parties acknowledged that. The court made the decision and said, as of the filing of this judgment, we declare that Kennedy Center owns it. And therefore, the other parties cannot use that anymore. During the time frame of the litigation, after the cease and desist letter, Joe Kennedy encouraged them to continue business as usual. He testified in the underlying court. He didn't want the customers, members, students, to even know that a lawsuit was going on. Basically, the parties kept business as usual until the court, until they had their day in court, and the court made a ruling, who owns this? Right, but when you get to the issue of acquiescence, generally there's an affirmative representation that no claim is going to be made. And here there was a claim made. So how do we justify sustaining the finding of acquiescence? Well, if you look at the finding of acquiescence, the court didn't justify an acquiescence. The court at, in its findings of fact, indicated that SAC had permission to use the trademark prior to July of 2006, and that even though it was disputed as to use after July 2006, they continued to have these conduct by Mr. Kennedy indicating business as usual go ahead. Right. I understand all that, but I mean, do you have a case in which a cease and desist letter has been given or a suit filed and then a finding of acquiescence was made? I did not find any cases indicating a situation wherein the client basically ignores what the attorney has done and continues to operate business as usual and go forward. And that's really the case. The client, not the attorney, but the client, continued to send information to Seller Agency Counsel as late as November of 2007. And that's why the court, in its final conclusions, did state. Why does it make a difference if, why does it make any difference at all whether the letter came from the attorney or the attorney on behalf of the client? Well, it has to do with the people that were involved, that were doing the conduct that is allegedly infringing were communicating with Joe Kennedy directly. And Joe Kennedy is the one who told them, here's the information. Here are the students. Please issue certificates. Please issue pins. Please go on forward. Keep business as usual. That's why it makes a difference because the people who were involved in supposedly needing to stop this conduct, as now is alleged, were directly communicating with the owner of the trademark who said, go ahead and do it. Is that? I'm sorry, go ahead. Thank you. Let me ask you, Mr. Roddy. You started off by saying the question really is who owns the trademark. That was what the district court found fundamentally was the issue in the underlying law. I take it you agree with that. That was the issue of who owned this newly created vehicle. And she ruled that they own it. Yes. And she also ruled that your guys are enjoined from ever using it again. Yes. And ruled that my clients, up until the date of judgment, had permission, consent, and acquiescence. I don't understand why they didn't recover their attorney's fees for procuring the injunction and these other declarations. Well, attorney's fees in these types of cases is for an exceptional case. And under equity, the only portion that the court found that was the unclean hands was in preventing Seller Agency Counsel from having its specific performance. It's unclean hands on your folks' part. Yes. And what did they do that was unclean hands? The court found that the distribution of the fees where Seller Agency Counsel had created an online course and the way that those fees were being distributed between the shareholders of Seller Agency Counsel, which would be Kennedy Center for Real Estate Education, and then my clients, the court made a finding that the distribution of those fees was not fair under the contract. Do I recall correctly, I don't deal with this every day, but in a trademark infringement case, the prevailing party is generally entitled to attorney's fees? No, it's an exceptional case. Is that by statute or by case law? My understanding is that it's by case law. It's an exceptional case. And as early as 1877, the Supreme Court of the United States in McLean v. Fleming indicated that cases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits even when the facts prove render it proper to grant an injunction to prevent future infringement. I mean, it's been something that's been common. Relief is constantly refused even where the right of the party to an injunction is acknowledged. I want to make sure I understand because I'm going to go check this out when we're done. The prevailing party in a trademark infringement case is not entitled to attorney's fees as a general rule? No, it's an automatic. No, it's an exceptional. This court works in equity to try and get a fairness between the parties. In a Lanham Act case, there's no attorney's fees for trademark infringement? Automatic. That's the issue. Okay. Can I ask, you said that the request from Mr. Kennedy was that there be business as usual and that the world not know about the dispute. I don't think their claim is that the only use that was made of the trademarks was the business as usual. They're saying that there was broader or different use made of the trademarks besides simply keeping the classes going. No, the underlying case was just simply business as usual. Nothing outside of what happened prior to July 2006. The parties continued to utilize this. So, in other words, from your point of view, all we have is before the lawsuit was filed, there were classes being given, and after the lawsuit was filed, there were classes being given, and the ASR trademarks were being used before and the ASR trademarks were being used afterwards, and there wasn't any use of the trademarks other than what was going on before the lawsuit was filed. It was similar both before and after. Well, similar is not the – it was the same. Yes. Okay. All right. Thank you. Thank you. I'd like to clear up a couple things real quick. One, Judge Silverman, I think, asked about attorney's fees. Attorney's fees are normally awarded in copyright cases to the prevailing copyright owner. In trademark cases, you're not automatically entitled to them if you prevail. You'd have to show that there was willful infringement, exceptional case, some additional circumstance. Thanks. Secondly, this idea that it was business as usual is nonsense. Mr. Kennedy had developed the ASR trademarks, was offering the courses, making money on it, started working together with the appellees, and then when things fell apart, he said, don't do that anymore, and he started offering his course again under his own trademarks, and he never, ever consented to them using his trademarks to continue offering courses. And for counsel to suggest the opposite is just false. It's just false. All he ever allowed them to do was to add his students for the courses that he was teaching once again under his own trademarks to the database that he had forwarded to them. And that's spelled out in the letter that he sent to the defendants. Yes, Your Honor. So the scope of what he acquiesced to, if he acquiesced to anything, was the specific use of the database and not business as it existed prior to the filing of the lawsuit. Yes, Your Honor. And it was, more specifically, it was a use of the database for Kennedy's benefit. It was add my students to that database. It was not continue to add your own students to the database. It was add my students to that database. And you're satisfied that the scope, the actual written communication that embodies this is clear. It's limiting. You can do this and you can't do that. It doesn't say you can't do that. But it says, yeah, we talked about that before, but you can do this. Yes. And you can do these things, one, two, and three. And that, in your view, as a matter of law, limits the scope of the acquiescence. Yes, under the Conan and pro fitness cases, clearly. And what's going on here is the scope of the acquiescence is limited to the extent of the consent. And the court has taken a little bitty consent and blown it up into something big. Well, I gather your position is that acquiescence isn't available as a complete defense to infringement. But I guess you would also concede that the scope of consent may be used in determining the appropriate amount of damages to award. I hadn't thought about that, Your Honor, but perhaps, yes. In other words, you have your version of the scope of consent. They have their version of the scope of consent. Whatever the fact finder would determine as a scope of use or permissible use might well, I suppose, affect the amount of damages. It could. Yeah. It could. But in here what's going on is they far exceeded the extent of the consent. Over our objection, we were suing them over that. And at a minimum, we're entitled to real to use profits. Keep in mind that what was going on there is that Mr. Kennedy had made a deal with Seller Agency Counsel. The district court found that that deal required Seller Agency Counsel to account all the money for Seller Agency Counsel. No money was to be diverted outside of that. So under the contract, if they had consummated the purchase, Mr. Kennedy was supposed to get 49% of the profits. What they were doing instead was allowing all the money to go to real to use. Real to use was taking in all the money. The district court found that was unclean hands. You're putting all the money in one of your other company's hands, and you're saddling Seller Agency Counsel with the debts, the operating expenses, so Mr. Kennedy's never going to get anything. So that was the unclean hands, that act of infringement. And so that's why real to you, who never had any permission of any sort from Kennedy, real to use profits are entirely disgorgeable. And we should recover those, and those are approximately $600,000. Thank you, counsel. Thank you. The case has been submitted for decision. Thank you both for your arguments and your briefing. Interesting case. There was also, I understand, a motion. Yes, we will take that under consideration. We sure will. Thank you. And with that, we'll proceed to the next case on the oral argument calendar, last for this morning, which is Johnson v. Mitsubishi.
judges: Fogel, Thomas, Silverman